# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| DAVID B. and A.B., | ) | |
| | ) | |
| Plaintiffs,[1] | ) | |
| | ) | |
| v. | ) | 1:24CV896 |
| | ) | |
| BLUE CROSS BLUE SHIELD OF NORTH CAROLINA, INSIGHT SOFTWARE, LLC, INSIGHTSOFTWARE LLC HEALTH BENEFITS PLAN (BLUE OPTIONS PPO PLAN), and GROUP ADMINISTRATOR DOE, | ) ) ) ) ) ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER
## OF UNITED STATES MAGISTRATE JUDGE

Plaintiffs David B. and A.B. brought this action against Defendants Blue Cross Blue Shield of North Carolina ("Blue Cross NC"), insightsoftware, LLC ("insightsoftware"), insightsoftware LLC Health Benefits Plan (the "Plan"), and Group Administrator Doe (collectively "Defendants") under the Employee Retirement Income Security Act of 1979 ("ERISA"), 29 U.S.C. §§ 1001 et seq. (Docket Entry 1 ("Compl.").) Defendants moved to dismiss the Complaint under Rule 12(b)(6) of the Federal Rules of Civil Procedure (Docket Entry 10 (the "Motion"); see also Docket Entry 11 (Brief in Support)), Plaintiffs responded in opposition (Docket Entry 15), and Defendants replied (Docket Entry 18). For the reasons that follow, the Court will grant Defendants' Motion with respect to the

---

[1] Consistent with Rule 5.2(a) of the Federal Rules of Civil Procedure, which requires parties to "include only . . . the minor's initials" in "filing[s] with the [C]ourt that contain[] . . . the name of an individual known to be a minor," the Court will, throughout this document, refer to the minor Plaintiff by his initials, "A.B.," and to the other named Plaintiff, A.B.'s father, as "David B."

Second Cause of Action, and deny the Motion regarding the First and Third Causes of Action (except for the dismissal of the First Cause of Action as against Defendant insightsoftware, LLC).

## I. Factual Allegations and Plaintiffs' Claims

Plaintiffs' Complaint alleges as follows:

Blue Cross NC issued the Plan, "a group health insurance policy[,] to insightsoftware" (Compl., ¶ 3), which qualified as a fully-insured employee "welfare benefits plan under [ERISA]" (id., ¶ 4). During the time at issue in this action, insightsoftware employed David B. (see id., ¶ 2), "Blue Cross NC determine[d] and pa[id] claims, and [wa]s a fiduciary under the [P]lan" (id., ¶ 5), David B qualified as "a participant in the Plan" (id., ¶ 6), and David B.'s son, A.B., qualified as "a beneficiary of the Plan" (id., ¶ 7).

A.B. "was diagnosed with certain conditions defined by the [Diagnostic and Statistical Manual of Mental Disorders, Fifth Edition ('DSM-V')], including persistent depressive disorder" and "was engaged in the abuse of certain substances." (Id., ¶ 27.) "A.B. was hospitalized at Dell Children's medical center in Austin, Texas" and, "[u]pon discharge, his providers there recommended further treatment at a facility such as Outback Therapeutic Journeys ('Outback')." (Id., ¶ 34.) "Outback was licensed by the State of Utah to provide therapeutic outdoor youth treatment to adolescents struggling with chronic mental health and other behavioral health conditions." (Id., ¶ 35.) "A.B. . . . received treatment [at Outback] from October 11, 2022, through December 29,

-2-

2022," and, "[d]uring that time, his mental health conditions and substance abuse problems improved." (<u>Id.</u>, ¶ 36).

"On April 4, 2023, Blue Cross [NC] sent an Explanation of Benefits (EOB)" to Plaintiffs (<u>id.</u>, ¶ 39) that "denied payment for A.B.'s treatment at Outback for alleged lack of preauthorization . . . on the entire sum [of $50,800.00]" (<u>id.</u>, ¶ 40). "On September 26, 2023, Plaintiffs submitted a Retrospective Review Request and appeal from the denial" (<u>id.</u>, ¶ 41), and "argued that preauthorization was not required under the [P]lan for A.B.'s treatment, that efforts to seek more information from the Blue Cross NC website had returned a '404 no page found' error, and other arguments against denying the claim based upon alleged failure to obtain prior review" (<u>id.</u>, ¶ 42). Plaintiffs also "requested that a 'parity analysis' be conducted under the Mental Health Parity and Addiction Equity Act (MHPAEA), and that they be provided with a copy [of that analysis]" (<u>id.</u>, ¶ 43), in addition to "request[ing] additional documents" (<u>id.</u>, ¶ 44), to "includ[e] all governing plan documents" (<u>id.</u>), "any clinical guidelines or medical necessity criteria utilized in [the adverse benefits] determination" (<u>id.</u>), "any reports or opinions about this claim provided . . . from any physician or other professional" (<u>id.</u>), and "the names, qualifications, and healthcare claim denial rates of all individuals who reviewed this claim or with whom [Blue Cross NC] consulted about this claim" (<u>id.</u>). "On October 27, 2023, Blue Cross NC issued a 'Notice of First Level Internal Adverse Benefit Determination' ('First Level Notice') regarding A.B.'s

treatment at Outback . . . uph[olding] the denial on the ground that preauthorization had not been obtained." (Id., ¶ 45.) "Blue Cross NC's [First Level Notice] did not include any of the documents requested in Plaintiffs' September 26, 2023, letter, including the parity analysis." (Id., ¶ 46.)

"On December 12, 2023, Plaintiffs submitted a Level Two Member Appeal disputing the First Level Notice." (Id., ¶ 47.) In that appeal, Plaintiffs again requested information and documents relating to a parity analysis under the MHPAEA (see id., ¶¶ 48-49), and "any reports or opinions about this claim provided . . . from any physician or other professional, as well as the names, qualifications, and healthcare claim denial rates of all individuals who reviewed this claim" (id., ¶ 49 (internal quotation marks omitted)). "On February 1, 2024, Blue Cross [NC] issued a denial letter to Plaintiffs" (id., ¶ 50), "stat[ing] that a Grievance Review Panel had recommended approving Plaintiffs' request to waive the prior authorization denial, and that Blue Cross [NC] had agreed to this recommendation" (id., ¶ 51). "Blue Cross NC reviewed the service[s A.B. received at Outback] for medical necessity[, but was] unable to approve benefits for Behavioral Health Services." (Id., ¶ 52 (internal quotation marks omitted).) Blue Cross NC determined that A.B.'s services at Outback qualified as "investigational." (Id., ¶ 54 (internal quotation marks omitted).) "The February 1, 2024, denial did not indicate what experience, if any, the [external medical expert] reviewer(s) had with the type of treatment or provider involved"

-4-

(id., ¶ 61), "included snippets of what Blue Cross NC characterized as 'pertinent' statements by the [external medical expert] reviewer" (id., ¶ 63), "did not mention or address any of the information or material that accompanied Plaintiffs' appeal" (id., ¶ 66), and "did not engage with the argument, facts, evidence or analysis contained in Plaintiffs' appeal" (id., ¶ 73).

"Plaintiffs filed an independent review organization (IRO) request with the North Carolina Dep[artment] of Insurance (NCDI)[,]" but the "NCDI informed Plaintiffs that they needed to exhaust internal appeal remedies specifically regarding the new medical necessity ground for denial raised by Blue Cross [NC] before an IRO review could be obtained." (Id., ¶ 74.) "On July 17, 2024, Plaintiffs submitted an appeal of Blue Cross [NC]'s February 1, 2024, denial of payment for services" and "titled th[at] document 'Level One Member Appeal.'" (Id., ¶ 76.) In that document, "Plaintiffs stated that the denial letter [they] received on February 1, 2024, cite[d] the [Magellan Care Guidelines ('MCG')] Criteria B-009-RES as the criteria utilized to review [their] case, and argued that reference to th[at Criteria] would be inappropriate when reviewing A.B.'s treatment" (id., ¶ 79), "provided documentation showing that Blue Cross insurers had previously provided coverage for services [such as A.B.'s] billed under the [National Uniform Billing Committee ('NUBC')] 1006 revenue code [for outdoor/wilderness behavioral health]" (id., ¶ 80), "provided peer reviewed research demonstrating that outdoor behavioral health treatment services have been established as effective alternatives

-5-

to residential treatment programs" (id., ¶ 81), "requested that Blue Cross [NC] conduct a full comparative parity analysis" under the MHPAEA (id., ¶ 82), and "requested any reports or opinions about this claim provided . . . from any physician or other professional, as well as the names, qualifications, and healthcare claim denial rates of all individuals who reviewed this claim" (id., ¶ 84). "Blue Cross NC did not respond [to Plaintiff's July 17, 2024, Level One Member Appeal]." (Id., ¶ 85.)

The Complaint asserts three Causes of Action: 1) a "Claim for Recovery of Benefits Under 29 U.S.C. § 1132(a)(1)(B)" (id. at 21; see also id., ¶¶ 88-95); 2) a "Violation of MHPAEA and equitable relief under 29 U.S.C. § 1132(a)(3)" (id. at 22; see also id., ¶¶ 96-106); and 3) a claim for statutory penalties for non-disclosure of requested plan documents under 29 U.S.C. §§ 1132(a)(1)(A) and (c) (see id., ¶¶ 107-13). In addition to seeking "[j]udgment in the total amount that is owed for A.B.'s treatment at Outback" (id., Prayer for Relief, ¶ 1), "[p]re- and post-judgment interest" (id., Prayer for Relief, ¶ 2), attorney's "fees and costs" (id., Prayer for Relief, ¶ 5), and "[a] penalty for nondisclosure of documents" (id., Prayer for Relief, ¶ 4), Plaintiffs seek "equitable relief" (id., Prayer for Relief, ¶ 3), including "[a] declaration that the action of Defendants violate [sic] the MHPAEA" (id., ¶ 106(a)), "[a]n injunction ordering Defendants to cease violating the MHPAEA and requiring compliance with the statute" (id., ¶ 106(b)), "[a]n Order requiring the reformation of the terms of the Plan and the medical necessity

-6-

criteria utilized by Defendants to interpret and apply the terms of the Plan to ensure compliance with the MHPAEA" (id., ¶ 106(c)), "[a]n Order requiring disgorgement of funds obtained or retained by Defendants as a result of their violations of the MHPAEA" (id., ¶ 106(d)), "[a]n Order requiring an accounting by Defendants of the funds wrongly withheld by each Defendant from participants and beneficiaries of the Plan as a result of Defendants' violations of the MHPAEA" (id., ¶ 106(e)), "[a]n Order based on the equitable remedy of surcharge requiring Defendants to provide payment to Plaintiffs as make-whole relief for their loss" (id., ¶ 106(f)), "[a]n Order equitably estopping Defendants from denying Plaintiffs' claims in violation of the MHPAEA" (id., ¶ 106(g)), and "[a]n Order providing restitution from Defendants to Plaintiffs for their loss arising out of Defendants' violations of the MHPAEA and unjust enrichment" (id., ¶ 106(h)).

## II. Standard of Review and Defendants' Attachments

A plaintiff fails to state a claim when the complaint does not "contain sufficient <u>factual</u> matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009) (emphasis added) (internal citations omitted) (quoting <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544, 570 (2007)). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of "entitlement to relief."'" <u>Id.</u> (quoting <u>Twombly</u>, 550 U.S. at 557). This standard "demands more than an unadorned, the-defendant-unlawfully-harmed-me

accusation." Id. In other words, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions," and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. "[D]etermining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Id. at 679; see also Francis v. Giacomelli, 588 F.3d 186, 193 (4th Cir. 2009).

"In deciding whether a complaint will survive a motion to dismiss, a court evaluates the complaint in its entirety, as well as documents attached [to] or incorporated into the complaint." E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc., 637 F.3d 435, 448 (4th Cir. 2011). The Court may also consider documents "attached to [the] motion to dismiss," so long as they qualify as "clearly integral to, and w[ere] relied upon in, [the] complaint" and the plaintiff "does not dispute [their] authenticity." Blankenship v. Manchin, 471 F.3d 523, 526 n.1 (4th Cir. 2006). Typically, a "court cannot go beyond th[o]se documents" without "convert[ing] the motion into one for summary judgment." E.I. du Pont, 637 F.3d at 448.

Here, Defendants attached to the instant Motion the "Benefit Booklet for insightsoftware, LLC for Blue Options" ("Benefit Booklet") (Docket Entry 11-1), as well as Plaintiffs' September 26, 2023, Retrospective Review Request (Docket Entry 11-2), Blue Cross NC's October 27, 2023, First Level Notice (Docket Entry 11-3),

Plaintiffs' December 12, 2023, Level Two Member Appeal (Docket Entry 11-4), Blue Cross NC's February 1, 2024, denial letter (Docket Entry 11-5), and a "Healthy Blue Medical Policy" governing coverage of "Wilderness Programs" (Docket Entry 11-6) (collectively "Appeal Documents").[2]  Although Plaintiffs' Complaint deems it "unclear whether the Benefit Booklet is (part of) the Plan or is a summary plan description" (Compl., ¶ 16), and notes that the Benefit Booklet's language "suggests the latter" (id. (citing Docket Entry 11-1 at 3)), Plaintiffs rely extensively on the terms of the Benefit Booklet in their Complaint (see id., ¶¶ 12-33, 55-60, 70), and have not disputed the authenticity of the Benefit Booklet (See Compl.; see also Docket Entry 15).  Additionally, Plaintiffs' Complaint relies on the Appeal Documents (see Compl., ¶¶ 41-75), and Plaintiffs have not challenged the authenticity of those Appeals Documents (see Compl.; see also Docket Entry 15).  Accordingly, in ruling on Defendants' instant Motion, the Court will consider the Benefit Booklet and Appeal Documents as referenced in and integral to the Complaint.  See E.I. du Pont, 637 F.3d at 448.

## III. Discussion

**A.    First Cause of Action – Recovery of Benefits under Section 1132(a)(1)(B)**

Section 1132(a)(1)(B) of ERISA authorizes "a participant or beneficiary . . . to recover benefits due to him under the terms of

---

[2] As noted by Defendants (see Docket Entry 11 at 20 n.16), Plaintiffs attached a copy of the last of those documents (Docket Entry 11-6) to their December 12, 2023, Level Two Member Appeal (see Docket Entry 11-4 at 6 & n.25).

his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." 29 U.S.C. § 1132(a)(1)(B). Moreover, "[ERISA] permits a person denied benefits under an employee benefit plan to challenge that denial in federal court." Metropolitan Life Ins. Co. v. Glenn, 554 U.S. 105, 108 (2008) (citing, inter alia, 29 U.S.C. § 1132(a)(1)(B)). The United States Supreme Court has further explained that right to judicial review of a benefits denial as follows:

> ERISA imposes higher-than-marketplace quality standards on insurers. It sets forth a special standard of care upon a plan administrator, namely, that the administrator 'discharge [its] duties' in respect to discretionary claims processing 'solely in the interests of the participants and beneficiaries' of the plan; it simultaneously underscores the particular importance of accurate claims processing by insisting that administrators provide a 'full and fair review' of claim denials, and it supplements marketplace and regulatory controls with judicial review of individual claim denials.

Id. at 115 (citing 29 U.S.C. §§ 1104(a)(1), 1132(a)(1)(B), 1133(2)) (internal citations and some internal quotation marks omitted).

With regard to the applicable standard of review under Section 1132(a)(1)(B), the United States Supreme Court has held that "[p]rinciples of trust law require courts to review a denial of plan benefits 'under a de novo standard' unless the plan provides to the contrary." Id. at 111 (quoting Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 115 (1989)). However, "[w]here the plan provides to the contrary by granting 'the administrator or fiduciary discretionary authority to determine eligibility for benefits,'" id. (quoting Firestone, 489 U.S. at 115), "'[t]rust

-10-

principles make a *deferential standard* of review appropriate,'" id. (quoting Firestone, 489 U.S. at 111 (in turn, citing Restatement (Second) of Trusts, § 187 (setting forth abuse of discretion standard)); see also Champion v. Black & Decker (U.S.) Inc., 550 F.3d 353, 359 (4th Cir. 2008) ("[C]ourts are to apply [] the abuse-of-discretion standard for reviewing discretionary determinations by [an] administrator" and, "[u]nder that familiar standard, a discretionary determination will be upheld if reasonable").

The Benefit Booklet reflects that Blue Cross NC had "discretionary authority to construe and to interpret the terms of the health benefit plan and to determine the amount of benefits, and its decision on such matters is final and conclusive subject only to the member's appeals process" (id. at 93 (small capitals omitted)), and Plaintiffs' Complaint does not address the applicable standard of review (see Compl.). In passing and without citation to authority, Plaintiffs state in their brief opposing the instant Motion that "[d]iscretionary authority is not at issue here, where Defendants did not respond to Plaintiffs' appeal of the investigational issue and therefore did not exercise any discretion." (Docket Entry 15 at 12 n.3.) Defendants, in reply, assert that "Blue Cross NC informed Plaintiffs their appeal was not timely perfected" (Docket Entry 18 at 4 n.4), but readily acknowledge that the Court cannot consider such outside-the-pleadings matters when ruling on their instant Motion (see id.). The Court need not resolve which standard of review applies at this

stage in the litigation because, even under the deferential abuse of discretion standard, and as the discussion to follow shows, Plaintiffs have sufficiently pleaded a plausible claim for wrongful denial of benefits under Section 1132(a)(1)(B).

Plaintiffs' Complaint alleges that, "[a]s set forth [in earlier paragraphs of the Complaint], [A.B.'s] treatment was covered by the terms of the Plan." (Compl., ¶ 91.) In previous paragraphs of the Complaint, Plaintiffs made the following allegations regarding the terms of the Plan:

> 23. The Benefit Booklet defines COVERED SERVICE as "A service, drug, supply or equipment specified in this benefit booklet for which MEMBERS are entitled to benefits in accordance with the terms and conditions of this health benefit plan."
>
> 24. Under the heading "Mental Health and Substance Use Disorder Services," the Benefit Booklet includes in its list of benefits "Mental Health Inpatient, Outpatient, and Residential Treatment Facility Services" and "Substance Use Disorder Inpatient, Outpatient, and Residential Treatment Facility Services[.]"[]
>
> 25. Under the heading "Mental Health and Substance Use Disorder Services," the Benefit Booklet states: ["]This health benefit plan provides benefits for the treatment of MENTAL ILLNESS and substance use disorder by a HOSPITAL, RESIDENTIAL TREATMENT FACILITY, DOCTOR or OTHER PROVIDER without a referral, and includes, but is not limited to: . . . Inpatient and RESIDENTIAL TREATMENT FACILITY services (includes room and board and related treatment)." The Benefit Booklet states that residential treatment centers are "included" in the broader category of inpatient services.
>
> 26. The definition of MENTAL ILLNESS in the Benefit Booklet includes "a mental disorder defined in the current edition of the [DSM-V]."
>
> 27. A.B. was diagnosed with certain conditions defined by the [DSM-V], including persistent depressive disorder. A.B. also was engaged in the abuse of certain substances. . . .

-12-

28. There is no definition of substance use disorder in the Benefit Booklet.  A.B. was treated for substance abuse at Outback.

29. The definition of RESIDENTIAL TREATMENT FACILITY in the Benefit Booklet is:

> A residential treatment facility is a facility that either: (1) offers treatment for patients that require close monitoring of their behavioral and clinical activities related to their chemical dependency or addiction to drugs or alcohol, or (2) offers treatment for patients that require psychiatric services for the diagnosis and treatment of MENTAL ILLNESS. All services performed must be within the scope of license or certification to be eligible for reimbursement.

30. The definition of FACILITY SERVICES in the Benefit Booklet is: "COVERED SERVICES provided and billed by a HOSPITAL or NONHOSPITAL FACILITY. All services performed must be within the scope of license or certification to be eligible for reimbursement."

31. The definition of NONHOSPITAL FACILITY in the Benefit Booklet  is: "An institution or entity other than a HOSPITAL that is accredited and licensed or certified in the state where located to provide COVERED SERVICES and is acceptable to Blue Cross NC.  All services performed must be within the scope of license or certification to be eligible for reimbursement."

32. The definition of OTHER PROVIDER in the Benefit Booklet is: "An institution or entity other than a HOSPITAL, which is accredited and licensed or certified in the state where located to provide COVERED SERVICES and which is acceptable to Blue Cross NC. All services performed must be within the scope of license or certification to be eligible for reimbursement."

(Compl., ¶¶ 23-32 (ellipsis and internal parenthetical citations omitted).[3]

---

[3] Words and phrases in all caps font denote terms specifically defined by the Plan.  (See Docket Entry 11-1 at 108-23 ("Glossary" of terms in Benefit Booklet).)

Defendants argue that, "[a]lthough the Complaint defines RESIDENTIAL TREATMENT FACILITY, FACILITY SERVICES, NONHOSPITAL FACILITY, and OTHER PROVIDER, Plaintiffs do not allege that Outback qualifies as any of those" (Docket Entry 11 at 12-13 (citing Compl., ¶¶ 29-32, 35)) but, rather, "allege that Outback's services are an 'alternative[] to residential treatment programs'" (id. at 13 (quoting Compl., ¶ 81)). Defendants thus contend that "Plaintiffs' conclusory allegation that the Plan covers Outback's service is insufficient to state a claim." (Id. (citing Compl., ¶ 91); see also id. (citing LB Surgery Ctr., LLC v. United Parcel Serv. of Am., Inc., No. 17-c-3073, 2017 WL 5462180, at *2 (N.D. Ill. Nov. 14, 2017) (unpublished), and Paragon Office Servs., LLC v. UnitedHealthcare Ins. Co., No. 3:11CV2205, 2012 WL 5868249, at *3 (N.D. Tex. Nov. 20, 2012) (unpublished)).)[4]

---

[4] Defendants additionally argue that the Court should dismiss Plaintiffs' First Cause of Action, because Plaintiffs "failed to obtain PRIOR REVIEW, which was required for inpatient services to be covered." (Docket Entry 11 at 13 n.12 (citing Docket Entry 11-1 at 54).) However, as Plaintiffs point out (see Docket Entry 15 at 6 n.1), the February 1, 2024, denial letter attached to Defendants' instant Motion reflects that Blue Cross NC accepted as its "final decision in th[e] matter" the Grievance Review Panel's "recommend[ation] to approve [Plaintiffs'] request to waive the prior authorization requirement." (Docket Entry 11-5 at 2 (emphasis added).) Nonetheless, the denial letter also states that Plaintiffs' appeal "[wa]s denied based on lack of prior authorization as well as the [Outback] program being wilderness therapy which is not a covered benefit as it is investigational/experimental." (Id. at 3 (emphasis added).) Given this factual conflict, the Court cannot, at this stage in the proceedings, dismiss Plaintiffs' First Cause of Action based on an alleged failure to obtain PRIOR REVIEW. Although Defendants cite Gagliano v. Reliance Std. Life Ins. Co., 547 F.3d 230, 239 (4th Cir. 2008), for the proposition that "Blue Cross NC's agreement to conduct a retrospective review . . . cannot create coverage through waiver" (Docket Entry 18 at 3 n.2), the Court finds that case distinguishable, because the Fourth Circuit found that the insurer's "mistake" in not initially asserting a pre-existing conditions limitation as the basis to terminate the plaintiff's disability benefits did not constitute waiver of the insurer's right to ultimately deny benefits on that ground. Gagliano, 547 F.3d at 239 (emphasis added). Here, in contrast, Blue Cross NC issued an appeal document expressly "waiv[ing]" the prior authorization requirement as its "final decision." (Docket Entry 11-5 at 2.)

-14-

Although the Complaint does not specifically assert that Outback qualifies as a RESIDENTIAL TREATMENT FACILITY, NONHOSPITAL FACILITY, and/or OTHER PROVIDER under the Plan (see Compl., ¶¶ 23-32), the factual allegations of the Complaint, considered with the Appeal Documents, taken as true for purposes of deciding the instant Motion, and viewed in the light most favorable to Plaintiffs with the benefit of all reasonable inferences, plausibly allege that 1) A.B. suffered from MENTAL ILLNESS as defined by the Plan and substance abuse disorder (which the Plan did not define) (see id., ¶¶ 26-28); 2) A.B.'s treatment providers recommended he obtain treatment at Outback after inpatient mental health treatment did not successfully treat his MENTAL ILLNESS (see id., ¶ 34); 3) Plaintiffs did not find outdoor behavioral health listed among the services requiring PRIOR REVIEW and CERTIFICATION under the Plan (see Docket Entry 11-2 at 2) and could not find additional information on Blue Cross NC's website and, thus, did not seek PRIOR REVIEW and CERTIFICATION (see Compl., ¶ 42); 4) after Blue Cross NC denied benefits for A.B.'s treatment at Outback for failure to obtain PRIOR REVIEW and CERTIFICATION, Plaintiffs sought retrospective review under the Plan, and Blue Cross NC ultimately agreed to waive the preauthorization requirement (see id., ¶¶ 45-51; see also Docket Entries 11-2 through 11-5); 5) Blue Cross NC thereafter denied benefits on the grounds of both lack of preauthorization and lack of medical necessity as "INVESTIGATIONAL," rather than failure of Outback to qualify as RESIDENTIAL TREATMENT FACILITY, NONHOSPITAL FACILITY, and/or OTHER

-15-

PROVIDER under the Plan (Compl., ¶¶ 52-56; <u>see also</u> Docket Entry 11-5), 6) Plaintiffs challenged Blue Cross NC's characterization of A.B.'s treatment at Outback as "INVESTIGATIONAL," and proffered material, including peer reviewed studies and the opinions of A.B.'s treatment providers, showing that Outback's treatment did not qualify as "INVESTIGATIONAL" under the Plan (Compl., ¶¶ 76-84), and 7) Blue Cross NC did not provide a response to Plaintiffs' appeal of the "INVESTIGATIONAL" ground (<u>id.</u>, ¶ 85). The Court further notes that the pleadings before the Court do not contain the criteria relied on by Blue Cross NC in determining that A.B.'s treatment at Outback qualified as "INVESTIGATIONAL," i.e., the "MCG 26th Edition Care Guidelines: Health Behavioral Health Care 26th Edition Persistent Depressive Disorder (Dysthymia): Residential Care ORG: B-009-RES (BHG), Blue Cross NC Corporate Medical Policy: Medical Necessity and Investigational(Experimental) Services." (<u>Id.</u>, ¶ 65 (quoting Docket Entry 11-5 at 3).)

Another Judge of this Court recently denied Blue Cross NC's motion to dismiss a plaintiff's claim under Section 1132(a)(1)(A) for wrongful denial of benefits for wilderness therapy under similar factual circumstances:

> Notably, [Blue Cross NC]'s denial based on the lack of medical necessity involved several rounds of medical reviews that invoked application of "Magellan Care Guidelines" and "Blue Cross NC Corporate Medical Policy (CMP) Medical Necessity", but those guidelines and policies are not contained in the Benefit Booklet relied on by [Blue Cross NC] in the [m]otion to [d]ismiss, and [the p]laintiff alleges that the services were in fact medically necessary, based on the opinions of [the adolescent beneficiary]'s doctors and therapists, and therefore covered under the terms of the [p]lan.

-16-

> Having considered the briefing, the Court concludes that the allegations in the [c]omplaint are sufficient to put [Blue Cross NC] on notice of the provisions of the [p]lan at issue. While [Blue Cross NC] may dispute [the p]laintiff's contentions, the analysis of whether the denial of benefits was reasonable under the terms of the [p]lan is a question for review on the record applying the relevant factors, and would be premature at this stage. Indeed, attempting to resolve these issues at this stage would essentially create an end-run around the structured process for judicial review in ERISA cases for a [p]lan participant challenging a specific denial of coverage.

N.E. v. Blue Cross Blue Shield of N. Carolina, No. 1:21CV684, 2023 WL 2696834, at *8 (M.D.N.C. Feb. 24, 2023) (unpublished) (Peake, M.J.), recommendation adopted, 2023 WL 2692414 (M.D.N.C. Mar. 29, 2023) (unpublished) (Biggs, J.); see also William J. v. BlueCross BlueShield of Texas, No. 3:22CV1919, 2023 WL 3635640, at *7 (N.D. Tex. May 24, 2023) (unpublished) ("[V]iewing the plaintiffs' complaint in the light most favorable to them, the plaintiffs plausibly allege that they are entitled to relief under [S]ection 1132(a)(1)(B), even without citing to relevant provisions of the plan. The plaintiffs pled enough to nudge their arguments across the line from conceivable to plausible, and, therefore, the court denies the defendants' motions to dismiss on this issue." (emphasis added) (internal citation omitted)), reconsideration denied, 2023 WL 6149126 (N.D. Tex. Sept. 18, 2023) (unpublished).[5]

---

[5] Defendants contend that all three of "Plaintiffs' claims against insightsoftware fail because Plaintiffs do not allege insightsoftware is an ERISA fiduciary or participated in the complained-of conduct." (Docket Entry 11 at 14 (bold font and block formatting omitted).) In that regard, Defendants assert that "[t]he only allegations concerning insightsoftware specifically are that it employed Plaintiff David B., obtained a fully insured group health insurance policy from Blue Cross NC, and had a group contract with Blue Cross NC." (Id. at 15 (citing Compl., ¶¶ 2-3, 13).) In response, Plaintiffs state that, "[b]ased on [their] understanding that [Blue Cross NC] is responsible (or has accepted
(continued...)

In sum, Plaintiffs have pleaded sufficient facts that plausibly allege the Plan covered A.B.'s treatment at Outback to survive Defendants' instant Motion.[6]

## B. Second Cause of Action - Equitable Relief under Section 1132(a)(3)

In the Second Cause of Action, Plaintiffs seek equitable relief under 29 U.S.C. § 1132(a)(3) for Defendants' alleged violation of the MHPAEA. (Compl., ¶¶ 96-106.) Section 1132(a)(3) permits a participant or beneficiary of a plan to bring a claim "(A) to enjoin any act or practice which violates any provision of th[e Protection of Employee Benefit Rights] subchapter [of ERISA] or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce

---

[5] (...continued)
responsibility for paying benefits, Plaintiffs do not oppose the dismissal of insightsoftware as a defendant with respect to [the First Cause of Action]." (Docket Entry 15 at 13-15 n.4.) Accordingly, the Court will grant Defendants' Motion to Dismiss the First Cause of Action as to Defendant insightsoftware. As discussed in more detail <u>infra</u>, the Court will grant Defendants' Motion to Dismiss as to all Defendants with respect to the Second Cause of Action, and deny the Motion as to all Defendants with respect to the Third Cause of Action.

[6] Defendants also maintain that "Plaintiffs conceded that Outback did not provide COVERED SERVICES throughout the administrative process," and that those "admissions that Outback did not provide COVERED SERVICES foreclose Plaintiffs' ability to plausibly allege the Plan covers the claims at issue." (Docket Entry 11 at 14.) In response, Plaintiffs correctly note that Blue Cross NC did not "raise[ that contention] during the administrative process" and, instead, "recognized that Plaintiffs argued that [A.B.'s] treatment was covered," "alleged lack of preauthorization[,] and then, once that issue was resolved, [maintained] that therapy provided in a wilderness setting is automatically 'INVESTIGATIONAL[.]'" (Docket Entry 15 at 13 (all caps font added); <u>see also</u> Docket Entries 11-3 at 2 & 11-5 at 2 (reflecting Blue Cross NC's statements recognizing that Plaintiffs "maintain[ed] that the services were medically necessary and should be covered by the [P]lan").) "[A] court reviewing an administrator's benefits decisions cannot consider reasons the administrator included in its internal notes when the administrator never conveyed those reasons to the claimant." <u>David P. v. United Healthcare Ins. Co.</u>, 77 F.4th 1293, 1313 (10th Cir. 2023). Accordingly, the Court will not dismiss the First Cause of Action based on any purported concession by Plaintiffs during the administrative process.

-18-

any provisions of th[e Protection of Employee Benefit Rights]
subchapter [of ERISA] or the terms of the plan." 29 U.S.C.
§ 1132(a)(3). In turn, the MHPAEA requires that, when a group
health plan (such as the Plan here) provides both medical/surgical
benefits and mental health/substance use disorder benefits, "the
treatment limitations applicable to such mental health or substance
use disorder benefits are no more restrictive than the predominant
treatment limitations applied to substantially all medical and
surgical benefits." 29 U.S.C. § 1185a(a)(3)(A)(ii). Treatment
limitations under the MHPAEA can qualify as quantitative or
nonquantitative. See 29 C.F.R. § 2590.712(a). "Quantitative
treatment limitations are expressed numerically (such as fifty
outpatient visits per year), while nonquantitative treatment
limitations otherwise limit the scope or duration of benefits."
Michael M. v. Nexsen Pruet Group Med. & Dental Plan, No. 3:18CV873,
2021 WL 1026383, at *10 (D.S.C. Mar. 21, 2021) (unpublished).
"Nonquantitative [treatment] limitations include, for example,
'medical management standards limiting or excluding benefits based
on medical necessity or medical appropriateness or based on whether
the treatment is experimental or investigative.'" Id. (quoting 29
C.F.R. § 2590.712(c)(4)(ii)(A)). "To determine whether the Plan
has imposed a more restrictive limitation on mental
health/substance use disorder benefits than comparable
medical/surgical benefits, the Court must identify what specific
benefits it is comparing," Michael M., 2021 WL 1026383, at *11, and
"a plaintiff must show that the mental health or substance use

-19-

disorder benefit being limited is in the same classification as the medical/surgical benefit to which it is being compared," A.H. by & through G.H. v. Microsoft Corp. Welfare Plan, Civ. No. C17-1889, 2018 WL 2684387, at *6 (W.D. Wash. June 5, 2018) (unpublished).

A plaintiff can allege violations of the MHPAEA by bringing (1) a facial challenge asserting that the terms of a plan discriminate against mental health and substance abuse treatments in comparison to medical or surgical treatment; or (2) an as-applied challenge alleging that the defendant applied the same nonquantitative treatment limitations more stringently to mental health and substance use disorder benefits. See Michael M., 2021 WL 1026383, at *10. Here, Plaintiffs' Complaint does not specify whether Plaintiffs intend to bring a facial or as-applied challenge under the MHPAEA, but (as previously documented) does "allege[] that Defendant[s] violated the [MHPAEA] when Defendant[s] applied medical necessity criteria more stringently by using acute inpatient care guidelines and criteria to evaluate claims for care received at sub-acute residential mental health/substance abuse treatment facilities, applied limitations based on the type of facility, and applied the preauthorization requirement[s] in ways that they were not applied to evaluate claims for care received at analogous medical/surgical facilities, and as a result, denied coverage for [A.B.]'s treatment at [Outback]," N.E., 2023 WL 2696834, at *10 (emphasis added). "Therefore, it appears that Plaintiffs bring an as-applied challenge." Id.

-20-

Defendants argue that the Court should dismiss Plaintiffs'
Second Cause of Action for equitable relief, because the First
Cause of Action for recovery of benefits due under the Plan under
Section 1132(a)(1)(B) would provide Plaintiffs with an adequate
legal remedy. (See Docket Entry 11 at 15-18.) According to
Defendants, Section 1123(a)(3) "is a 'safety net provision' that
'does not authorize claims "where the plaintiff's injury finds
adequate relief in another part of ERISA's statutory scheme."'"
(Id. at 15 (quoting Koman v. Reliance Std. Life Ins. Co., No.
1:22CV595, 2022 WL 17607056, at *3 (M.D.N.C. Dec. 13, 2022)
(unpublished) (Biggs, J.) (in turn, quoting Korotynska v.
Metropolitan Life Ins. Co., 474 F.3d 101, 105 (4th Cir. 2006))).)
Thus, Defendants argue, "[w]here a plaintiff asserts an equitable
relief claim seeking redress for the same injuries as a claim for
benefits, dismissal 'at the motion to dismiss stage is
appropriate.'" (Id. (quoting Koman, 2022 WL 17607056, at *3 n.2).)
In Defendants' view, "Plaintiffs are not entitled to any of th[e
equitable] remedies [they requested in the Complaint],
. . . because their injury remains the denial of benefits[, and a]
claim for benefits could adequately redress that injury." (Id. at
17.)[7]

---

[7] Significantly, Plaintiffs did not address Defendants' arguments under
Korotynska and Koman (see Docket Entry 15 at 17-23), and conceded "that, if
Plaintiffs are ultimately awarded relief under Count I, their MHPAEA count will
be moot" (id. at 17). Moreover, persuasive authority from other district courts
within the Fourth Circuit undermines any argument that the general rule
permitting the pleading of alternative liability theories precludes dismissal of
claims like Plaintiffs' Second Cause of Action under such circumstances. See
Gasper v. EIDP, Inc., No. 3:23CV512, 2024 WL 1446594, at *3 (W.D.N.C. Apr. 3,
2024) (unpublished) ("[The p]laintiff [] contends the Fourth Circuit . . . could
(continued...)

In <u>Varity Corp. v. Howe</u>, 516 U.S. 489 (1996), the United States Supreme Court held that, "where Congress elsewhere provided adequate relief for a beneficiary's injury [under ERISA], there will likely be no need for further equitable relief, in which case such relief normally would not be 'appropriate,'" <u>id.</u> at 515, and thus held that Section 1132(a)(3) operates as a "catchall"

---

[7](...continued)
not have been more clear when it stated . . . [that] 'Federal Rule of Civil Procedure 8(a)(3) specifically permits pleading "in the alternative," so nothing would have prevented plaintiff from suing under both provisions.' *Hayes*[ *v. Prudential Ins. Co. of Am.*, 60 F.4th [848,] 855 [(4th Cir. 2023)] (citations omitted). However, the [Fourth Circuit] did not address whether[,] had the plaintiff [pleaded in the alternative], either cause of action would be susceptible to dismissal. The [Fourth Circuit] made this observation arguably, in dicta. *Id.* While th[e c]ourt acknowledges, as other courts in this district have, that a panel opinion like *Hayes* cannot overrule a decision of a prior panel, there is still some support the Fourth Circuit would permit a plaintiff to plead claims under [Section 1132](a)(1)(B) and [Section 1132](a)(3) in the alternative. *See Rose v. PSA Airlines, Inc.*, 80 F.4th 488, 495 n.4 (4th Cir. 2023) (stating in a footnote "[p]laintiffs are allowed to plead in the alternative, 'so nothing would have prevented [plaintiff] from suing under both provisions[]'" (quoting *Hayes*, 60 F.4th at 855)). However, even if this precedent allows pleading in the alternative, the key question here — as it was in *Rose* — is whether the relief [the p]laintiff seeks qualifies as equitable relief. As the [c]ourt stated in *Rose*, 'compensatory damages intended to provide "monetary relief for all losses sustained as a result of the alleged breach of fiduciary duties" are legal, not equitable, relief.' *Rose*, 80 F. 4th at 496 (quoting *Mertens v. Hewitt Assocs.*, 508 U.S. 248, 255 (1993)).")<u>; T.S. v. Anthem Blue Cross Blue Shield</u>, No. 1:23CV60, 2023 WL 5004499, at *3 (W.D.N.C. Aug. 4, 2023) (unpublished) ("Contrary to [the p]laintiffs' assertion, the Fourth Circuit's decision in *Hayes* did not alter the rule established in *Korotynska*. Rather, *Hayes* is an application of that rule, allowing a plaintiff to bring a claim for equitable relief simultaneously with a claim for benefits under Section 1132(a)(1)(B) in 'exceptional' and 'special circumstances.' . . . [T]he court noted in dicta that federal rules and Fourth Circuit precedent allow pleading in the alternative under certain circumstances, and thus 'nothing would have prevented plaintiff from suing under both provisions.' *Id.* at 855. But the court did not address whether, had the plaintiff done so, either cause of action would be susceptible to dismissal, which is the situation addressed by *Korotynska*. Accordingly, *Hayes* does not 'reject' or otherwise render inapplicable *Korotynska*, which controls the outcome in this case. Here, [the p]laintiffs' equitable claim under the [MHPAEA] is almost identical to the plaintiff's equitable claim in *Korotynska*[, and the] underlying injury is the same — [the d]efendants' denial of benefits under the [p]lan. [The p]laintiffs have a cause of action against the [p]lan directly under [Section] 1132(a)(1)(B). [T]hus, relief through the application of Section 1132(a)(3) would be inappropriate." (footnotes and internal quotation marks omitted)).

provision and "safety net, offering appropriate equitable relief for injuries caused by violations that [Section 1132] does not elsewhere adequately remedy," id. at 512. The Fourth Circuit has similarly held that "no question" existed, Korotynska, 474 F.3d at 105, that a plaintiff's Section 1132(a)(3) claim for "reform of the systemic and improper and illegal claims handling practices that [the insurer] use[d] to deny her and other ERISA beneficiaries a full and fair review of their claims for disability benefits," id. at 104, actually "pressed a claim for individual benefits" and "that [the plaintiff's] injury is redressable . . . [u]nder [Section] 1132(a)(1)(B)," id. at 106; see also id. at 107 ("[The court] join[s] our sister circuits and hold[s] that [Section] 1132(a)(1)(B) affords the plaintiff adequate relief for her benefits claim, and a cause of action under [Section] 1132(a)(3) is thus not appropriate.").

Here, Plaintiffs seek "equitable relief" (Compl., Prayer for Relief, ¶ 3), including "[a] declaration that the action of Defendants violate [sic] the MHPAEA" (id., ¶ 106(a)), "[a]n injunction ordering Defendants to cease violating the MHPAEA and requiring compliance with the statute" (id., ¶ 106(b)), "[a]n Order requiring the reformation of the terms of the Plan and the medical necessity criteria utilized by Defendants to interpret and apply the terms of the Plan to ensure compliance with the MHPAEA" (id., ¶ 106(c)), "[a]n Order requiring disgorgement of funds obtained or retained by Defendants as a result of their violations of the MHPAEA" (id., ¶ 106(d)), "[a]n Order requiring an accounting by

Defendants of the funds wrongly withheld by each Defendant from participants and beneficiaries of the Plan as a result of Defendants' violations of the MHPAEA" (id., ¶ 106(e)), "[a]n Order based on the equitable remedy of surcharge requiring Defendants to provide payment to Plaintiffs as make-whole relief for their loss" (id., ¶ 106(f)), "[a]n Order equitably estopping Defendants from denying Plaintiffs' claims in violation of the MHPAEA" (id., ¶ 106(g)), and "[a]n Order providing restitution from Defendants to Plaintiffs for their loss arising out of Defendants' violations of the MHPAEA and unjust enrichment" (id., ¶ 106(h)).

All of those equitable remedies, however packaged, ultimately seek to obtain payment for A.B.'s treatment at Outback under the Plan - relief which Section 1132(a)(1)(B) adequately provides. See Gasper v. EIDP, Inc., No. 3:23CV512, 2024 WL 1446594, at *4 (W.D.N.C. Apr. 3, 2024) (unpublished) ("[The p]laintiff's second claim for relief simply repackages the same argument for a single injury. [The p]laintiff alleges no additional facts or injury other than the wrongful denial of benefits, and [the p]laintiff's requested relief under [Section 1132](a)(3) would all serve the ultimate purpose of allowing [the p]laintiff to recover wrongfully denied benefits. [The p]laintiff's claims are impermissibly duplicative because no relief sought by the [p]laintiff is unavailable under [Section 1132](a)(1)(B)." (internal quotation marks, brackets, ellipsis, and citation omitted)); R.P. & M.P. v. BlueCross BlueShield of N. Carolina, No. 5:22CV295, 2023 WL 4242746, at *2 (E.D.N.C. June 28, 2023) (unpublished) ("[T]he only

-24-

harm that flowed from the alleged breach of fiduciary duty was the denial of benefits. Because [Section] 1132(a)(1)(B) remedied the denial of benefits, the alleged breach of fiduciary duty is adequately remedied without invoking [Section] 1132(a)(3). Indeed, if the [c]ourt followed [the] plaintiffs' logic, any beneficiary claiming a wrongful denial of benefits could 'repackage' her claim as a breach of fiduciary duty."); Carol P. v. Truliant Fed. Credit Union, No. 3:22CV356, 2023 WL 2110896, at *4 (W.D.N.C. Jan. 25, 2023) (unpublished) ("[The p]laintiffs [] assert that the relief sought under the [MHPAEA] claim is distinct. But the standard is not whether the relief sought is distinct. It is whether 'relief is potentially available to [a plaintiff] under [Section] 1132(a)(1)(B)[,]' Korotynska, 474 F.3d at 106. '[The p]laintiff[s'] approach would promote [Section] 1132(a)(3) from safety net to first line of attack, an outcome at odds with both the plain language of [Section] 1132(a)(1)(B) and the statutory structure of [Section] 1132." Id. at 108. Here, [the p]laintiffs' underlying injury is the same – [the d]efendants' denial of benefits under the [p]lan. [The p]laintiffs have a cause of action against the [p]lan directly under [Section] 1132(a)(1)(B). '[T]hus, relief through the application of Section 1132(a)(3) would be inappropriate.' Id. at 107."), recommendation adopted, 2023 WL 2088436 (W.D.N.C. Feb. 17, 2023) (unpublished); Alan R. v. Bank of Am. Grp. Benefits Program, No. 3:20CV441, 2022 WL 413935, at *11 (W.D.N.C. Feb. 9, 2022) (unpublished) ("[The p]laintiffs' [MHPAEA] claim does appear to be a repackaged claim for the denial of

benefits claim.  [The p]laintiffs bring a claim under the [MHPAEA] as an-applied violation which raises the same concerns as [the p]laintiffs' [S]ection 1132(a)(1)(B) claim that [the insurer]'s decision to deny benefits because [the adolescent beneficiary]'s treatment was not medically necessary was the wrong decision. While the issue for [the p]laintiffs' [MHPAEA] claim is whether [the insurer] applied the [Level of Care Assessment Tool] more restrictively than the guidelines applied to certain medical and surgical conditions, it does not change the ultimate injury and intent of the claim which is the same as that raised in the [S]ection 1132(a)(1)(B) claim."); Greenwell v. Group Health Plan for Employees of Sensus USA, Inc., 505 F. Supp. 3d 594, 607 (E.D.N.C. 2020) ("[The] plaintiff's claim for himself and the putative class under [Section] 1132(a)(3) must be dismissed under Varity and Korotynska as their injuries are adequately remedied by the relief available under [Section] 1132(a)(1)(B).  The injunctive relief and equitable accounting and disgorgement sought under [Section] 1132(a)(3) seek to remedy the same injury that the [Section] 1132(a)(1)(B) does: the wrongful denials of Plaintiff and the putative class members' claims for coverage."); Exact Sciences Corp. v. Blue Cross & Blue Shield of N. Carolina, No. 1:16CV125, 2017 WL 1155807, at *9 (M.D.N.C. Mar. 27, 2017) (unpublished) (Tilley, S.J.) ("[The plaintiff]'s alleged injuries resulting from the alleged breach of fiduciary duties are redressable under [Section 1132](a)(1)(B) pursuant to which [the plaintiff] is seeking, in Count 1, the benefits it claims that BCBS-NC has

-26-

improperly denied. BCBS-NC's motion to dismiss Count 2 [seeking relief under Section 1132(a)(3)] is granted."); Wood v. General Dynamics Corp., 157 F. Supp. 3d 428, 431-32 (M.D.N.C. 2016) ("[The d]efendants [] move to dismiss [the p]laintiff's breach of fiduciary duty claims, variously styled as claims for misrepresentation, failure to follow plan documents, omission, equitable estoppel, and surcharge. [The p]laintiff brings each of these claims under the equitable relief provision in [Section] 1132(a)(3). . . . [T]here is no question that [the p]laintiff's denial of benefits claims could provide adequate remedies for her alleged injuries. The complaint implicitly acknowledges as much by requesting the same relief for her equitable claims as it does for her denial of benefits claims. Because Plaintiff's denial of benefits claims could provide an adequate remedy for all of her injuries, her claims for equitable relief under Section 1132(a)(3) will be dismissed." (internal quotation marks and parenthetical citations omitted)); Patterson v. Duke Univ., No. 1:14CV1062, 2015 WL 5608126, at *2-3 (M.D.N.C. Sept. 23, 2015) (unpublished) (Tilley, S.J.) ("Here, the clear focus of [the plaintiff]'s suit is the denial of benefits she alleges are due to her. . . . As in *Korotynska*, [Section] 1132(a)(1)(B) affords [the plaintiff] an adequate remedy for her claimed denial of benefits. Furthermore, resolution of her claims requires a review, interpretation, and application of . . . an ERISA-regulated plan, not simply a review, interpretation, and application of ERISA. Therefore, [the plaintiff]'s second claim for relief seeking equitable relief under

[Section] 1132(a)(3) is dismissed."); <u>Wright v. Hartford Life & Acc. Ins. Co.</u>, No. 5:14CV126, 2015 WL 4488656, at *8 (W.D.N.C. July 23, 2015) (unpublished) ("A benefits determination under [Section] 1132(a)(1)(B) should consider the fiduciary's decision making process and the fiduciary's motives and any conflict of interest it may have. Because the fiduciary's conduct is woven into a claim for benefits, bringing multiple causes of action for the same conduct asking for the same outcome is duplicative, rendering equitable relief unnecessary. Th[e c]ourt [previously] warned against plaintiffs attempting to repackage benefit claims as claims for breach of fiduciary duty in this manner . . . . [The p]laintiff seeks equitable relief in the form of an injunction against [the d]efendant from engaging in further violations of ERISA. But this equitable relief 'is pursued with the ultimate aim of securing the remedies afforded by [Section] 1132(a)(1)(B).' *Korotynska*, 474 F.3d at 108. Further, as the District of South Carolina noted[,] 'simply because one [may be] unable to prevail on the merits under a [Section] 1132(a)(1)(B) claim does not mean such a claim is not an adequate remedy.' *Johnson v. Michelin North America*, 658 F. Supp. 2d 732, 744 (D.S.C. 2009). [The p]laintiff's claim for equitable relief arises out of [the insurer]'s handling of [the p]laintiff's [long term disability] benefit claim, and thus the [c]ourt finds that monetary relief under [Section] 1132](a)(1)(B) would adequately remedy [the p]laintiff's injury and that an additional claim under [Section 1132(a)(3) is duplicative and unnecessary." (some internal quotation marks and internal

-28-

citations omitted)); <u>Roland v. Jefferson Pilot Fin. Ins. Co.</u>, No. 1:07CV982, 2008 WL 11483555, at *5 (M.D.N.C. Apr. 16, 2008) (unpublished) (Dixon, M.J.) ("[The p]laintiff seeks the kind of relief available under [S]ection 1132(a)(1)(B) – that is, 'to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan.' Specifically, the complaint alleges that [the p]laintiff is entitled to recover benefits due to him under the [p]lan and enforce his rights under the [p]lan pursuant to 29 U.S.C. [§] 1132(a)(1)(B). In sum, for these reasons, Plaintiff may not pursue a breach of fiduciary duty action under . . . [S]ection 1132(a)(3), and his breach of fiduciary duty claim should therefore be dismissed." (internal quotation marks and parenthetical citation omitted)).

With regard specifically to Plaintiffs' request for equitable relief in the form of "reformation of the terms of the Plan and the medical necessity criteria utilized by Defendants to interpret and apply the terms of the Plan to ensure compliance with the MHPAEA" (Compl, ¶ 106(c)), the Court notes that the United States Supreme Court has held that "[it] ha[d] found nothing suggesting that [Section 1132(a)(1)(B)] authorizes a court to alter th[e] terms [of an ERISA plan], at least not in present circumstances, where that change, akin to the reform of a contract, seems less like the simple enforcement of a contract as written and more like an equitable remedy," <u>CIGNA Corp. v. Amara</u>, 563 U.S. 421, 436 (2011), and thus found that reformation of a plan's terms "f[e]ll within

the scope of the term 'appropriate equitable relief' in [Section 1132](a)(3)," id. at 442.

Here, however, as discussed above, Plaintiffs bring an as-applied challenge to the Plan under the MHPAEA, alleging not that the Plan's terms, on their face, discriminate against mental health and substance abuse disorder treatment, but that Blue Cross applies those terms in a manner that violates the MHPAEA. As such, Plaintiffs do not plausibly allege that they seek "reformation of the terms of the Plan" (Compl., ¶ 106(c) (emphasis added)) but, rather, enforcement of Blue Cross NC's application of the Plan's terms in a manner consistent with the MHPAEA, relief that Section 1132(a)(1)(B) affords, see 29 U.S.C. § 1132(a)(1)(B) (authorizing "a participant or beneficiary . . . to enforce his rights under the terms of the plan"). See Korotynska, 474 F.4th at 107-08 ("Not only is relief available to the plaintiff under [Section] 1132(a)(1)(B), but the equitable relief she seeks under [Section] 1132(a)(3) - the revision of claims procedures - is pursued with the ultimate aim of securing the remedies afforded by [Section] 1132(a)(1)(B)."); see also L.L. v. Medcost Benefit Servs., No. 1:21CV265, 2023 WL 4375663, at *4 (W.D.N.C. July 5, 2023) (unpublished) ("[T]he [p]laintiffs allege that an MHPAEA-compliant process would have resulted in an award of benefits. Accordingly, to the extent the plan administrator violated the MHPAEA, such violations can be raised and adequately addressed through the [p]laintiffs' [Section] 1132(a)(1)(B) claim. That is a claim based on enforcement of the statute (i.e., a claim at law) pursuant to

-30-

[Section] 1132(a)(1)(B), not an equitable claim pursuant to [Section] 1132(a)(3) . . . ." (internal bracketed citation omitted)); William J., 2023 WL 3635640, at *8-9 (finding that, where the plaintiffs sought recovery of benefits under Section 1132(a)(1)(B) as well as equitable remedies including reformation of plan terms under Section 1132(a)(3) for alleged MHPAEA violations, "[w]hichever way the plaintiffs frame their allegations, whether as a breach of fiduciary duty, breach of contract, failing to properly administer benefits, applying exclusion criteria that the plan does not contain, or applying more restrictive standards to [the adolescent beneficiary's outdoor behavior health] treatment than for other forms of treatment, all of the plaintiffs' allegations boil down to one issue: whether the defendants improperly denied covering [the adolescent beneficiary]'s treatment" and, as a result, dismissing the Section 1132(a)(3) claim as "duplicative," because "[S]ection 1132(a)(1)(B) provides the plaintiffs with an adequate avenue for the remedies that they seek through [S]ection 1132(a)(3)"); N.E., 2023 WL 2696834, at *13 (noting that the plaintiff sought reformation of the plan's terms under Section 1132(a)(3), "conclud[ing] that it [wa]s likely that a [Section 1132](a)(1)(B) remedy [wa]s or would be adequate to address [the p]laintiff's injury related to the alleged [MHPAEA] violation, particularly where [the p]laintiff raises 'as applied' [MHPAEA] claims, and therefore [holding that] a separate claim under [Section] 1132(a)(3) [wa]s duplicative," but

-31-

opting to "defer determination of [that issue]" to later stages of the litigation).[8]

In short, the Court will dismiss the Second Cause of Action under Section 1123(a)(3) as duplicative under <u>Varity</u> and <u>Korotynska</u>. In light of that determination, the Court need not address Defendants' alternative argument that Plaintiffs failed to plausibly allege a violation of the MHPAEA (<u>see</u> Docket Entry 11 at 18-21).

## C. Third Cause of Action - Statutory Penalties under Section 1132(a)(1)(A) and (c)

"Section 1132(c) . . . provides for liability against 'any administrator . . . who fails or refuses to comply with a request for any information which such administrator is required by this subchapter to furnish to a participant or beneficiary.'" <u>Craine v. Hartford Life & Acc. Ins. Co.</u>, No. 1:08CV586, 2010 WL 1957593, at *3 (M.D.N.C. May 17, 2010) (unpublished) (quoting 29 U.S.C. § 1132(c)(1)). "Specifically, 29 U.S.C. § 1024(b)(4) requires plan administrators to 'furnish a copy of the latest updated summary, plan description, and the latest annual report, any terminal report, the bargaining agreement, trust agreement, contract, or other instruments under which the plan is established or

_____

[8] Moreover, as Defendants point out (<u>see</u> Docket Entry 11 at 17 n.15), to the extent that Plaintiffs seek <u>prospective</u> equitable remedies such as "[a]n injunction ordering Defendants to cease violating the [MHPAEA]" (Compl., ¶ 106(b)) and "reformation of the terms of the Plan . . . to ensure compliance with the [MHPAEA]" (<u>id.</u>, ¶ 106(c)), "former plan participants like Plaintiffs 'do not have standing to seek [such] relief because they are not realistically threatened by [ D]efendant[s'] future breaches of fiduciary duties.'" (Docket Entry 11 at 17 (quoting <u>Kendall v. Pharmaceutical Product Dev., LLC</u>, No. 7:20CV71, 2021 WL 1231415, at *13 (E.D.N.C. Mar. 31, 2021) (unpublished)) (internal quotation marks omitted).)

operated.'"  Id.  District courts have the discretion to award a daily statutory penalty (currently $110) if a plan administrator fails or refuses to comply with a written request within thirty days.  See id.; see also 29 C.F.R. § 2575.502c-1.

In Plaintiffs' Complaint, they allege, "[u]pon information and belief, [that] Blue Cross NC was the Plan Administrator, was appointed agent by the Plan Administrator for the receipt of response to Participant document requests, and/or was delegated the Plan Administrator's obligation to respond to Participants' requests for documents."  (Compl., ¶ 113.)  In Plaintiff's view:

[f]acts supportive of th[at] belief include:

a. The Benefit Booklet contains a vague description of the Plan Administrator (within the definition of "Group Administrator") as an unspecified "representative of the Employer designated to . . . provide information to SUBSCRIBERS and MEMBERS concerning this health benefit plan."

b. The Benefit Booklet does not name or provide any additional information for the Plan Administrator.

c. The Benefit Booklet states that this Group/Plan Administrator "has the discretionary authority and responsibility to manage and direct the operation of the Plan." Elsewhere in the Benefit Booklet, Blue Cross NC suggests that it claims discretionary authority under the plan.

d. The Benefit Booklet, which is part of the Plan or a summary plan description, states that "Blue Cross and Blue Shield of North Carolina has directed that this Benefit Booklet be issued and signed by the President and the Secretary [of Blue Cross NC]." Under ERISA, it is the Plan Administrator's role to issue plans and summary plan descriptions.

e. The Benefit Booklet uses MEMBER of the Plan and Member of Blue Cross NC interchangeably.

f. Plaintiffs asked Blue Cross NC to forward their document requests to the plan administrator if Blue Cross

-33-

NC was not the plan administrator, and Blue Cross NC did not forward the requests.

(Id., ¶ 131.)

Defendants contend that Plaintiffs' Third Cause of Action "fails[,] because they did not direct their requests [for Plan documents] to the plan administrator." (Docket Entry 11 at 21 (bold font and block formatting omitted).) In that regard, Defendants (A) note that "Plaintiffs requested documents only from Blue Cross NC" (id. at 22 (citing Compl., ¶¶ 41, 45, 47, 50)), and (B) assert that "Blue Cross NC is not the plan administrator" (id.). According to Defendants, "[u]nder the Benefit Booklet, the GROUP ADMINISTRATOR is 'the plan administrator for purposes of ERISA'" (id. (quoting Docket Entry 11-1 at 114)), and "[t]he Benefit Booklet identifies the GROUP ADMINISTRATOR as a 'representative of the EMPLOYER designated to assist with MEMBER enrollment and provide information to SUBSCRIBERS and MEMBERS concerning this health benefit plan.'" (Id. (quoting Docket Entry 11-1 at 114)). Defendants further maintain that "neither the Plan nor insightsoftware is the plan administrator" (id. at 23), because "[t]he 'Plan itself cannot be the plan administrator, as the terms "plan" and "plan administrator" are entirely distinct'" (id. (quoting Figlioli v. Liberty Life Assurance Co. of Boston, No. 1:17CV171, 2018 WL 834616, at *3 (N.D. W. Va. Feb. 12, 2018) (unpublished))), and "insightsoftware is the employer that established the Plan, making it the 'plan sponsor'" (id. (quoting 29 U.S.C. § 1002(16)(B))). Defendants concede that "a plan sponsor can be the plan administrator if the plan does not otherwise

-34-

designate an administrator" (id. (citing 29 U.S.C. § 1002(16)(A)(ii)), but contends that "the Plan designates a plan administrator" (id. (citing Docket Entry 11-1 at 114)). Defendants additionally argue that Group Administrator Doe "cannot be liable for penalties," as "Plaintiffs do not allege they submitted a written request for documents to [that entity]." (Id. (citing Compl., ¶¶ 41, 47, 76).)

Although Defendants deny in their arguments in support of the instant Motion that Blue Cross NC constitutes the plan administrator (see Docket Entry 11 at 22; see also id. at 23 (further denying that the Plan or insightsoftware constitute the plan administrator)), Defendants' denials do not constitute factual allegations that the Court can consider on a motion to dismiss under Rule 12(b)(6). Further complicating matters, neither the Benefit Booklet nor Blue Cross NC's denial letters during the administrative appeals process identify the plan administrator. (See Docket Entries 11-1, 11-3, and 11-5.) In light of the absence of this information in the pleadings before the Court and, as quoted above, Plaintiffs' allegations that Blue Cross NC constituted either the plan administrator or, through agency or delegation, obtained the plan administrator's duty to receive participants' document requests under ERISA (see Compl., ¶ 113), the Court will not dismiss the Third Cause of Action at this early stage in the litigation. Compare N.E., 2023 WL 2696834, at *13-14 (dismissing claim for statutory penalties under Section 1132(c) against the defendant BlueCross, where BlueCross identified the

-35-

<u>defendant employer as the plan administrator</u> and "contend[ed] that the[] statutorily required documents were provided by [the defendant employer], the [p]lan [a]dministrator").

### IV. Conclusion

Plaintiff have stated a claim for relief in the First Cause of Action (except against Defendant insightsoftware, LLC), as well as in the Third Cause of Action, but the Second Cause of Action fails as a matter of law due to its duplicativeness.

**IT IS THEREFORE ORDERED** that Defendants' Motion to Dismiss (Docket Entry 10) is **GRANTED IN PART AND DENIED IN PART**, in that, 1) as to the First Cause of Action, the Motion to Dismiss is **GRANTED** as to Defendant insightsoftware, but **DENIED** as to all other Defendants; 2) regarding the Second Cause of Action, the Motion to Dismiss is **GRANTED** as to all Defendants; and 3) with respect to the Third Cause of Action, the Motion to Dismiss is **DENIED** as to all Defendants.

/s/ L. Patrick Auld
**L. Patrick Auld**
**United States Magistrate Judge**

September 30, 2025